UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE B. HARRIS,<br>Plaintiff,<br>v.<br>D. ARDEN, et al.,<br>Defendants. | Case No. 1:21-cv-00818-KES-CDB (PC)<br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT**<br>(Doc. 62)<br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**<br>(Doc. 68)<br>**ORDER VACATING DISCOVERY AND SCHEDULING ORDER**<br>(Docs. 50 & 67) |

Plaintiff Devonte B. Harris is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. section 1983.

## I. INTRODUCTION

On January 29, 2026, the Court issued its Order Lifting Stay, Order Directing Clerk of the Court to Issue Discovery and Scheduling Order, and Order Setting Deadline for Defendants' Response to Plaintiff's Pending Discovery Request. (Doc. 49.) The Discovery and Scheduling Order issued the same date. (Doc. 50.)

On April 15, 2026, Plaintiff filed a motion for leave to amend the complaint (Doc. 62) and lodged the proposed second amended complaint (Doc. 63). Defendants opposed (Doc. 69) and Plaintiff replied (Doc. 70).

On May 4, 2026, Plaintiff filed a motion to compel concerning a request for production of documents propounded to Defendants. (Doc. 68.) Defendants opposed. (Doc. 71.)

## II. MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

***The Parties' Briefing***

Plaintiff contends he now has "a complete and present cause of action for federal malicious prosecution and deliberate fabrication of evidence" following dismissal of "the related criminal case." Plaintiff states his stored legal property was returned to him on April 7, 2026, containing his original complaint, necessary for the proposed amendment. Plaintiff contends that although his "various causes of action accrued on different dates, they stem from the same operative event" and thus should be litigated together. He maintains Defendants will not be prejudiced by amendment to the complaint because defense counsel "is thoroughly acquainted with the relevant criminal proceedings as she used them to obtain a nearly 2 year stay … in pursuit of a *Heck* bar defense that never materialized."

In opposing Plaintiff's motion, Defendants argue that Plaintiff's proposed malicious prosecution claim is futile because Plaintiff cannot show that the prosecution of the Kings County Superior Court criminal matter resulted in a favorable termination for Plaintiff. The matter was not dismissed on the merits; rather, it was dismissed after Plaintiff completed a mental health diversion program. Further, Defendants argue that Plaintiff's reliance on *Duarte v. City of Stockton*, 60 F.4th 566 (9th Cir. 2023) is misplaced.

In his reply to Defendants' opposition, Plaintiff contends Defendants' argument "is off base" and that the majority of the cases cited in their opposition "were decided before the United States Supreme Court held that a federal malicious prosecution claim does not require an indicia of innocent to constitute a favorable termination." Further, Plaintiff contends that amendment should be permitted because following the filing of the motion, he "obtained court documents showing the first count of the criminal complaint for battery on a peace officer was dismissed

outright even before completing his mental health diversion."

***Applicable Legal Standards***

The Federal Rules of Civil Procedure provide that a party may amend his or her pleading "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). However, as in the instant case, once an answer has been filed, a party may amend a pleading only by leave of court or by written consent of the adverse party. *See* Fed. R. Civ. P. 15(a)(2). Although "[t]he court should freely give leave when justice so requires," under Rule 15(a)(2), and there is presumption in favor of granting leave to amend, such leave need not be granted where such amendment (1) would prejudice the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *Eminence Capital LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178 (1962)); *Amerisource Bergen Corp. v. Dialysist West, Inc*., 465 F.3d 946, 951 (9th Cir. 2006). Courts within this circuit accord the greatest weight to "the consideration of prejudice to the opposing party," the prejudice-showing burden resting on the opposing party. *Eminence Capital*, 316 F.3d at 1052; *Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty*., 708 F.3d 1109, 1117 (9th Cir. 2013) ("[T]he consideration of prejudice to the opposing party carries the greatest weight"). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052.

***The Proposed Amended Complaint***

Plaintiff's proposed second amended complaint names existing Defendants Arden, Gamboa, Garcia, and Pasillas, and adds as a new defendant Correctional Sergeant D. Perez. (*See* Doc. 63 at 2, 4.) Claims I and II remain largely unchanged as compared to the same claims asserted in the first amended complaint. (*Cf*. Doc.  at 4-21 to Doc. 63 at 5-11.) Plaintiff seeks to add two claims: Claim III – "Fourth Amendment of the Constitution," identifying the issue involved as "malicious prosecution"; and Claim IV — "Fourteenth Amendment of Constitution," identifying the issue involved as "Deliberate Fabrication of Evidence." (*See* Doc. 63 at 12-15.)

<u>Claim III Supporting Facts</u>

Plaintiff asserts that on August 11, 2020, "as a result of Defendants' false retaliatory

reports, the Kings [C]ounty District Attorney filed a criminal complaint" against him. In count 1, the complaint alleged Plaintiff committed a battery on a non-confined person, Defendant Arden, a felony in violation of California Penal Code section 4501.5. In counts 2, 3 and 4, the complaint alleged Plaintiff unlawfully attempted by means of threats and violence to prevent or deter Arden, Garcia, and Gamboa, respectively, from performing a duty and knowingly resisted by the use of force or violence, a felony in violation of California Penal Code section 69. The complaint further alleged Plaintiff had suffered prior convictions for serious and violent felonies, in violation of California Penal Code sections 667(b)-(i) and 1170.12(a)-(d). Plaintiff asserts a prior involving "kidnap for robbery" is a "'super strike,'" citing California Penal Code section "667(e)(2)(C)(iv)(VIII)." Plaintiff alleges he faced 25 years-to-life for each count if convicted. He asserts that he "accepted mental health diversion with no admission of guilt" and on January 14, 2026, "all charges were dismissed after Plaintiff's satisfactory performance in diversion."

Plaintiff contends that with the dismissal of the state court criminal action, he "had a complete and present cause of action for federal malicious prosecution" and maintains that dismissal "did not require an indicia of innocence to constitute 'favorable termination,'" citing *Thompson v. Clark*, 596 U.S. 36, 39 (2022). Plaintiff asserts the Ninth Circuit Court of Appeals has expressly held that successful completion of California's pretrial diversion programs constitutes favorable termination. Plaintiff alleges any independent decision of the district attorney "establishing that there was probable cause to file this criminal action is rebutted by the false information Defendants reported." He contends "Defendants acted for the purpose of denying Plaintiff the right to be free from excessive force and retaliation," and that he exhausted his administrative remedies "though the same grievance that reported the excessive force."

<u>Claim IV Supporting Facts</u>

Plaintiff's asserts as follows: "This claim is based on same facts alleged in federal malicious claim. Deveraux v. Abbey, 263 F.3d 1070, 1074-75 (2001)." (Doc. 63 at 15.)

<u>Malicious Prosecution: Applicable Legal Standards</u>

To state a claim of malicious prosecution, a plaintiff must plead the following: (i) the suit or proceeding was "instituted without any probable cause"; (ii) the "motive in instituting" the suit

"was malicious," which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution "terminated in the acquittal or discharge of the accused." *Thompson v. Clark*, 596 U.S. 36, 44 (2022) (quoting T. Cooley, Law of Torts 180 (1880)). Stated another way, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) (brackets in original), quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir.1995); *see Hebrard v. Nofziger*, 90 F.4th 1000, 1007-08 (9th Cir. 2024). "Malicious prosecution actions are not limited to suits against prosecutors but may be brought ... against other persons who have wrongfully caused the charges to be filed." *Hebrard*, 90 F.4th at 1108 (citing *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002)).

As concerns favorable termination, in *Thompson*, the Supreme Court rejected the argument that modern tort law should inform the contours of a Fourth Amendment malicious prosecution claim. *Thompson*, 596 U.S. at 47-48. The Supreme Court acknowledged that the Restatement (Second) of Torts (1976) endorsed the idea that the favorable termination element requires some affirmative showing of innocence, as have many jurisdictions today. *Id.* But it explained that the "relevant inquiry" to understand the meaning of a malicious prosecution claim under the Fourth Amendment is tort law in early American history, not current tort law. *Id.* at 48.

<u>Fabricated Evidence: Applicable Legal Standards</u>

"[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc). "A plaintiff can prove deliberate fabrication in two ways." *Richards v. County of San Bernardino*, 39 F.4th 562, 569 (9th Cir. 2022). "Most basically, a plaintiff can produce direct evidence of deliberate fabrication." *Caldwell v. City & Cnty. of S.F.*, 889 F.3d 1105, 1112 (9th Cir. 2018). "Alternatively, a plaintiff can produce circumstantial evidence related to a defendant's motive." *Id.* To prove fabrication using circumstantial motive evidence, a plaintiff must establish that

either: (a) "[d]efendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent"; or (b) "[d]efendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076.

"To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (citations omitted). To establish the second element of causation, the plaintiff must show "that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." *Id*. (citations omitted). Causation is established if the plaintiff "can show a reasonable likelihood that the allegedly fabricated [ ] evidence could have affected the judgment of the jury." *Richards*, 39 F.4th at 573-74. "Mere carelessness is insufficient, as are mistakes of tone. Errors concerning trivial matters cannot establish causation, a necessary element of any § 1983 claim. And fabricated evidence does not give rise to a claim if the plaintiff cannot show the fabrication actually injured her in some way." *Spencer*, 857 F.3d at 798.

***Analysis***

Defendants argue that Plaintiff's motion for leave to file an amended complaint should be denied because his malicious prosecution claim is futile. Below, the Court considers both Claim III (malicious prosecution) and Claim IV (fabricated evidence) as asserted in the proposed second amended complaint.

<u>Plaintiff's Malicious Prosecution Claim Is Not Necessarily Futile</u>

The undersigned finds Plaintiff's malicious prosecution claim is not necessarily futile. While the proposed second amended complaint fails to state a cognizable malicious prosecution claim, it is possible Plaintiff may be able to amend the claim to state additional facts in support thereof. More particularly, Plaintiff must avoid conclusory references to "Defendants" as a group. Rather, he must identify what specific action each Defendant took to state a claim. *See Gibson v.*

*City of Portland*, 165 F.4th 1265, 1287-90 (9th Cir. 2026) (simply grouping some or all defendants and ascribing to them generalized assertions of overall conduct is insufficient). Stated more plainly, Plaintiff must specifically identify the actions of each Defendant in each claim. And Plaintiff should take note of the legal standards provided above and allege facts sufficient to meet the requirements for a malicious prosecution claim for each Defendant. The Court notes that while Plaintiff seeks to add Sergeant Perez as a defendant in this action, Claim III alleges no facts whatsoever as to Perez and thus fails to state a claim against Perez.

At page 11 of the proposed second amended complaint, concerning Claim II, Plaintiff alleges "Arden authored a false retaliatory report against [him] for battery on a peace officer cover up Defendants excessive force" and that "Garcia, Gamboa, and Pasillas also gave false retaliatory supporting reports …." (Doc. 63 at 11.) Liberally construed *and if those facts had been presented as a part of Claim III*, they plausibly allege Defendants Arden, Garcia, Gamboa, and Pasillas, with malice and in the absence of probable cause, caused charges to be filed against Plaintiff in the state superior court and that Defendants Arden, Garcia, Gamboa, and Pasillas did so for the purpose of denying Plaintiff a constitutional right.[1] *Hebrard*, 90 F.4th at 1007-08.

Further, as concerns the issue of favorable termination, the proposed second amended complaint asserts that on January 14, 2026, "all charges were dismissed after Plaintiff's satisfactory performance in diversion." (Doc. 63 at 13.) For purposes of a malicious prosecution claim, that is sufficient to demonstrate a favorable termination. *Thompson*, 596 U.S. at 39 ("To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim ... for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction"); *see Powelson v. Havel*, No. 24-cv-08245-JST, 2025 WL 2696429, at *10 (N.D. Cal. Sept. 22, 2025) ("Since *Thompson* was decided, both the Ninth Circuit … and at least three district courts have permitted malicious prosecution claims to go forward notwithstanding the plaintiff's participation in a diversion program") (citing cases); *Dillon v. Nguyen*, No. 24-cv-04735-JST, 2025 WL 673645, at *3 (N.D. Cal. Mar. 3, 2025) (denying motion to dismiss and stating that "The *Thompson* Court found that a voluntary dismissal without

[1] But again, there are no facts alleged indicating D. Perez is tied to a claim of malicious prosecution.

an explanation from the judge or prosecutor satisfied the favorable termination element" and noting that Dillon's "felony assault weapon charges were dismissed while the remaining charges were reduced to misdemeanors and then ultimately resolved through a diversion program"); *Hulet v. County of Tuolumne*, No. 1:23-cv-01217-KES-HBK, 2024 WL 3758360, at *14 (E.D. Cal. Aug. 12, 2024) (denying motion to dismiss malicious prosecution claim and stating: "Consistent with *Thompson*, Hulet is required to plead only that his prosecution ended without a conviction. … Hulet does so"); *Krystal v. City of Carlsbad*, No. 22-cv-1329-BAS-JLB, 2023 WL 3829718, at *6 (S.D. Cal. June 5, 2023) (rejecting argument that dismissal of criminal case following plaintiff's completion of a military diversion program did not constitute a favorable termination and declining to dismiss malicious prosecution claim).

<u>Plaintiff's Fabricated Evidence Claim Is Not Necessarily Futile</u>

The undersigned finds Plaintiff's fabricated evidence or *Deveraux* claim is not necessarily futile. While the proposed second amended complaint fails to state a cognizable fabricated evidence claim, it is possible Plaintiff may be able to amend the claim to state additional facts in support thereof. As noted above, Plaintiff must avoid conclusory references to "Defendants" as a group. Rather, he must identify what specific action each Defendant took to state a claim. *Gibson*, 165 F.4th at 1287-90. And, like Claim III, Claim IV alleges no facts whatsoever as to Perez. As a result, Plaintiff fails to state any claim against Perez.

Plaintiff may be able to sufficiently allege that Defendants deliberately fabricated evidence and that the deliberate fabrication caused the deprivation of his liberty. *Spencer*, 857 F.3d at 798. Further, he may be able to sufficiently allege that Defendants acts were the "cause in fact of the deprivation of liberty" and that those acts were the "'proximate cause' or 'legal cause' of the injury …." *Id.*; *Richards*, 39 F.4th at 573-74.

<u>Summary of Analysis</u>

In sum, the undersigned finds Plaintiff's proposed malicious prosecution and fabricated evidence claims are not necessarily futile. However, as presented in the proposed or lodged second amended complaint, Plaintiff fails to state a malicious prosecution or a fabricated evidence claim upon which relief can be granted. Plaintiff's motion will be granted in part and

Plaintiff will be afforded an opportunity to file a third amended complaint, curing the deficiencies identified above, assuming he can do so in good faith. *See Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000); *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

## III. MOTION TO COMPEL PRODUCTION OF DOCUMENTS

### *The Parties' Briefing*

Plaintiff contends Defendants replied to his request for production of documents on March 6, 2026, "but produced none of the requested documents." Plaintiff states Defendants "produced a privilege log and a declaration by J. Aguilar Apolina," asserting the documents contained confidential information that could endanger the safety of inmates and staff and institutional security if produced. Plaintiff argues that Defendants did not meet their burden in asserting the official information privilege because "[t]hey essentially argue that every confidential inquiry package is privileged and can be withheld from discovery by merely listing it in a privilege log" and "without regard to its content or importance to the case." Plaintiff contends the Aguilar Apolina declaration "fails to adequately address individually how the potential threat or harm exist in this particular case with these particular documents." Moreover, Plaintiff argues public policy favors disclosure because he "cannot acquire these investigative reports by other means" and they are very significant to his case. He states: "In an excessive force case such as this, the relevance and discoverability of officers' disciplinary records, including unfounded allegations of misconduct, are widely recognized." Plaintiff asks the Court to order Defendants "to produce all the responsive documents listed in their privilege log."

Defendants oppose Plaintiff's motion. They argue the use of force critique documents requests in RPD Nos. 1 and 2 are protected from disclosure and treated as confidential by the California Department of Corrections and Rehabilitation (CDCR). The documents involve the reviewers' conclusions and/or recommendations concerning the use of force on the relevant date. CDCR does not disclose use of force critique documents to inmates in order to preserve the integrity of the investigative process. Further, Defendants contend RPD No. 2 is unduly burdensome because the request seeks "use of force critiques prepared related to non-party inmates' excessive use of force allegations from June 14, 2014 to June 14, 2019 against

Defendants" and would require "prison personnel to first search their databases for any staff complaints filed against the Defendants during that time, then individually search the paper files in storage pull these allegations from storage, as these documents are 7-12 years old, not maintained in electronic format, and stored in archives. Prison personnel then must manually review each grievance to assess whether the staff complaint involves an allegation of excessive force, then cross reference that allegation with an incident package and the related use of force critique, then separately manually locate and pull that use of force critique from storage," involving "many hours" and "multiple staff members across various departments." Moreover, Defendants maintain that even if such documents exist, they "have no relevance to whether any of the Defendants, here, in this specific incident, used excessive force on the Plaintiff. Fed. R. Evid. 404(a). If the documents do exist, they may disclose that Defendants did not use excessive force in prior incidents and therefore are entirely irrelevant. Instead, they may only include unsubstantiated allegations. … Even if they do contain substantiated allegations, the request is still overly broad, unduly burdensome, and disproportionate to the needs of the case."

Next, Defendants contend the *Kelly* factors weigh in favor of withholding confidential documents. Defendants maintain that the factual information contained in the use of force critique documents is largely duplicative of non-confidential information that is accessible to Plaintiff: "the related incident report package and medical records contained in Incident Report log number COR-04A-19-06-0690." Those materials are equally available to Plaintiff "in his prison files" and his failure to request the incident report package or his related medical records "may account for why Plaintiff did not request them." An incident report contains a summary of the use of force applied, the identities of all known witnesses and participants, the reports of all involved staff, and the medical records documenting injuries; it "is the primary source of information gathered in connection with the staff use of force on June 14, 2019." Use of force critique documentation is different; it "reveals the internal steps taken to analyze and determine whether a use of force was appropriate and that decision making process;" may contain witness statements or evidence, the disclosure of which would "not materially add to the non-confidential information that Plaintiff already possesses or may access;" may also include confidential staff and inmate witness

statements not contained in the incident reports — who provide statements "under the belief that they will remain confidential" which may hinder future investigations. Defendants maintain the "confidential information contained in the use of force critique is either duplicative of non-confidential information, amounts to staff conclusions or assessments, reveals the investigative process, reflects personnel files, unduly invades the privacy of others, or is administrative in nature. … Balanced against CDCR's interests in protecting its investigative processes, good cause exists to find that they are protected by the official information privilege. Moreover, a carefully crafted protected order is unlikely to adequately address the substantial risks of harm. … A protective order will not guarantee that the information in these confidential documents will not make its way into the inmate population." Defendants request that should this Court intend to order Defendants to produce the relevant use of force critique documents, that "it be subject to in camera review for the Court to determine whether disclosure is outweighed by the potential risk to institutional safety and security." Additionally, if disclosure is warranted, Defendants request the identity of any inmate witness or non-party correctional staff members be redacted and that a protective order be issued permitting Plaintiff to view and take notes regarding the document in a secure setting only; should Plaintiff wish to file the document, he must coordinate with defense counsel to file the document under seal.

Further, Defendants argue the Court should deny Plaintiff's motion as concerns RPD Nos. 3 and 4 "because the investigative findings and any discipline related to COR-2140-21-3543 are unrelated to the subject use of force or retaliation claims" as those documents concern Plaintiff's allegations against now dismissed Defendant Boersma, whom Plaintiff alleged falsely accused him of indecent exposure and masturbating in front of her. Boersma was dismissed from this action following screening. And, like RPD Nos. 1 and 2, RPD Nos. 3 and 4 are protected by the official information and relevant privacy privileges. As concerns RPD No. 4, Defendants maintain that, as Plaintiff was advised, no responsive documents exist because no staff were disciplined.

In conclusion, Defendants asserts their responses were proper and that Plaintiff has failed to demonstrate how their responses were deficient or that their objections were not justified. They

ask the Court to deny Plaintiff's motion to compel.

***Applicable Legal Standards***

Motion to Compel

"District courts have broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16." *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (quotation marks & citation omitted). The purpose of discovery is to "remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *United States. v. Chapman Univ*., 245 F.R.D. 646, 648 (C.D. Cal. 2007) (quotation & citation omitted). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense …." Fed. R. Civ. P. 26(b)(1).

A motion to compel is appropriate where a party fails to produce relevant, non-privileged documents requested pursuant to Rule 34 that are in the responding party's possession, custody, or control. Fed. R. Civ. P. 37(a)(3). If a party, in response to a request for production under Rule 34, fails to produce or permit inspection, the discovering party may move for an order compelling production. *Id*. An evasive or incomplete answer or response to a discovery request "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P 37(a)(4). The party seeking the motion to compel discovery has the burden of informing the court why the defendants' objections are not justified or why the defendants' responses are deficient.

Generally, if a responding party objects to a discovery request, the party moving to compel bears the burden of demonstrating that the objections are unjustified. *See, e.g*., *Grabek v. Dickinson*, No. CIV S-10-2892 GGH P, 2012 WL 113799, at *1 (E.D. Cal. Jan. 13, 2012); *Womack v. Virga*, No. CIV S-11-1030 MCE EFB P, 2011 WL 6703958, at *3 (E.D. Cal. Dec. 21, 2011). This requires the moving party to inform the court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the objections lack merit. *Grabek*, 2012 WL 113799, at *1; *Womack*, 2011 WL 6703958, at *3.

Official Information Privilege

Federal common law recognizes a qualified privilege for official information. *Kerr v. U.S.*

*Dist. Ct. for the N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975). In determining what level of protection should be afforded by this privilege, courts conduct a case-by-case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege. *Soto v. City of Concord*, 162 F.R.D. 603, 613-14 (N.D. Cal. 1995); *see Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990); *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987); *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992); *Hampton v. City of San Diego*, 147 F.R.D. 227, 230-31 (S.D. Cal. 1993).

However, before a court will engage in this balancing of interests, the party asserting the privilege must properly invoke the privilege by making a "substantial threshold showing." *Kelly*, 114 F.R.D. at 669. To make a substantial threshold showing of a qualified privilege, a "party must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." *Id.* The affidavit must include: "(1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made." *Id.* at 670; accord *Chism v. Cnty. of San Bernardino*, 159 F.R.D. 531, 533 (C.D. Cal. 1994); *Hampton*, 147 F.R.D. at 230-31; *Miller*, 141 F.R.D. at 301. A strong affidavit would also describe how the plaintiff could acquire information of equivalent value from other sources without undue economic burden. *Kelly*, 114 F.R.D. at 670.

If the court concludes that a defendant's submissions are not sufficient to meet the threshold burden, it will order disclosure of the documents in issue. If a defendant meets the threshold requirements, and Plaintiff has made the required showing in the motion to compel, the

court will order an *in camera* review of the material and balance each party's interests. *See Kelly,* 114 F.R.D. at 671; *Chism*, 159 F.R.D. at 533-34; *Hampton*, 147 F.R.D. at 231; *Miller*, 141 F.R.D. at 301.

However, before the Court orders disclosure or an *in camera* review, the burden shifts to Plaintiff to prove: (1) how the requested information is relevant to the litigation or is reasonably calculated to lead to the discovery of admissible evidence; (2) the interest that would be harmed if the material were not disclosed; and (3) how that harm would occur and how extensive it would be. *Kelly*, 114 F.R.D. at 670-71.

***The Requests at Issue***

Plaintiff's motion concerns his Requests for Production of Documents (RPD) to Defendants Arden (Doc. 68 at 10), Garcia (*id*. at 12), Gamboa (*id*. at 14), and Pasillas (*id*. at 16). Because the requests are identical, the Court will state the four requests at issue and Defendants' objections only once; its rulings will apply to RPDs 1 through 4 propounded to all Defendants.

> RPD No. 1: Please produce the "review of use of force critiques and qualitative evaluation" for Plaintiff's allegation of excessive force against Defendant on 6/14/19.
>
> Defendants' Response: Objection. This request is vague and ambiguous as to the terms "qualitative evaluations." This request seeks information that is deemed confidential under Cal. Code Regs. tit. 15, § 3321, the disclosure of which could: (1) endanger the safety of other inmates and staff of the CDCR, or (2) jeopardize the security of the institution. Additionally, the production of confidential information is improper on the grounds that an inmate shall not have access to information designated confidential. Cal. Code Regs. tit. 15, § 3370. Use of Force evaluations and personnel-related files are subject to the qualified privilege of official information and a federal common law privilege. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1991). Personnel files, including staff complaints contained therein, are also protected by the privacy rights of staff, including federal common law and applicable California statutes including Penal Code sections 832.7, 832.8, Government Code section 6254 and Civil Code sections 1798.24 and 1798.40 and California Code of Regulations Title 15, section 3400. Personnel files also are protected under California Evidence Code section 1040, et seq., including section 1043. Defendants further object as this request seeks statements by other inmates which are confidential and private in nature, disclosure of which violates inmate privacy. *See* Declaration of J. Aguilar Apolinar in support of Defendants' Privilege Log and Defendants' Privilege Log.

<u>RPD No. 2</u>: Please produce all "review of use of force critiques and qualitative evaluations" for prisoner allegations of excessive force against Defendant from 6/14/14 to 6/14/19.

<u>Defendants' Response</u>: Objection. This request is overbroad and unduly burdensome and not proportional to the needs of this case. This request seeks impermissible character evidence. This request is vague and ambiguous as to the term "qualitative evaluations." This request does not have any tendency to make a fact of consequence more or less probable than it would be without the requested evidence. This request seeks information that is deemed confidential under Cal. Code Regs. tit. 15, § 3321, the disclosure of which could: (1) endanger the safety of other inmates and staff of the CDCR, or (2) jeopardize the security of the institution. Additionally, the production of confidential information is improper on the grounds that an inmate shall not have access to information designated confidential. Cal. Code Regs. tit. 15, § 3370. Use of Force evaluations and personnel-related files are subject to the qualified privilege of official information and a federal common law privilege. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1991). Personnel files, including staff complaints contained therein, are also protected by the privacy rights of staff, including federal common law and applicable California statutes including Penal Code sections 832.7, 832.8, Government Code section 6254 and Civil Code sections 1798.24 and 1798.40 and California Code of Regulations Title 15, section 3400. Personnel files also are protected under California Evidence Code section 1040, et seq., including section 1043. Defendants further object as this request seeks statements by other inmates which are confidential and private in nature, disclosure of which violates inmate privacy. *See* Declaration of J. Aguilar Apolinar in support of Defendants' Privilege Log and Defendants' Privilege Log.

<u>RPD No. 3</u>: Please produce the investigative findings from the "investigative closure memorandum" log #COR-2140-21-3543 by SCR Lieutenant K. Cruz on 4/22/22 concerning the events of 6/14/19.

<u>Defendants' Response</u>: Objection. This request does not have any tendency to make a fact of consequence more or less probable than it would be without the requested evidence as the requested report concerns an allegation against a staff member who was dismissed in this case. (See ECF No. 8.) This request seeks information that is deemed confidential under Cal. Code Regs. tit. 15, § 3321, the disclosure of which could: (1) endanger the safety of other inmates and staff of the CDCR, or (2) jeopardize the security of the institution. Additionally, the production of confidential information is improper on the grounds that an inmate shall not have access to information designated confidential. Cal. Code Regs. tit. 15, § 3370. Use of Force evaluations and personnel-related files are subject to the qualified privilege of official information and a federal common law privilege. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1991). Personnel files, including staff complaints contained therein, are also protected by the privacy rights of staff, including federal common law and applicable California statutes including

> Penal Code sections 832.7, 832.8, Government Code section 6254 and Civil Code sections 1798.24 and 1798.40 and California Code of Regulations Title 15, section 3400. Personnel files also are protected under California Evidence Code section 1040, et seq., including section 1043. Defendants further object as this request seeks statements by other inmates which are confidential and private in nature, disclosure of which violates inmate privacy. *See* Declaration of J. Aguilar Apolinar in support of Defendants' Privilege Log and Defendants' Privilege Log.
>
> RPD No. 4: Please produce any disciplinary determinations from the "investigative closure memorandum" log #COR-2140-21-3553 by SCR Lieutenant K. Cruz on 4/25/22 concerning the events of 6/14/19.
>
> Defendants' Response: Objection. This request does not have any tendency to make a fact of consequence more or less probable than it would be without the requested evidence as the requested report concerns an allegation against a staff member who was dismissed in this case. (See ECF No. 8.) This request seeks information that is deemed confidential under Cal. Code Regs. tit. 15, § 3321, the disclosure of which could: (1) endanger the safety of other inmates and staff of the CDCR, or (2) jeopardize the security of the institution. Additionally, the production of confidential information is improper on the grounds that an inmate shall not have access to information designated confidential. Cal. Code Regs. tit. 15, § 3370. Use of Force evaluations and personnel-related files are subject to the qualified privilege of official information and a federal common law privilege. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1991). Personnel files, including staff complaints contained therein, are also protected by the privacy rights of staff, including federal common law and applicable California statutes including Penal Code sections 832.7, 832.8, Government Code section 6254 and Civil Code sections 1798.24 and 1798.40 and California Code of Regulations Title 15, section 3400. Personnel files also are protected under California Evidence Code section 1040, et seq., including section 1043. Defendants further object as this request seeks statements by other inmates which are confidential and private in nature, disclosure of which violates inmate privacy. *See* Declaration of J. Aguilar Apolinar in support of Defendants' Privilege Log and Defendants' Privilege Log.
>
> Without waiving said objections, Defendants respond as follows: No responsive documents exist because no staff were disciplined in relation to COR-2140-21-3543.

(*See* Doc. 60 at 10, 19-22.)

***Analysis***

The Court begins with RPD No. 4. Plaintiff's request specifically asked Defendants to "produce any disciplinary determinations from the 'investigative closure memorandum' log #COR-2140-21-3553 by SCR Lieutenant K. Cruz on 4/25/22 concerning the events of 6/14/19."

Without waiving the objections, Defendants responded that no responsive documents exist and that no staff were disciplined. The Court cannot compel Defendants to produce documents which do not exist. *See, e.g.*, *Tate v. Nakashyan*, No. 1:22-cv-00624-SKO, 2025 WL 3467732, at *5 (E.D. Cal. Dec. 3, 2025) (denying motion to compel response where defendant "have indicated that no responsive documents involve Nakashyan"); *Hoffman v. Jones*, No. 2:15-cv1748-EFB P, 2017 WL 5900086, at *12 (E.D. Cal. Nov. 30, 2017) ("Defendant states that no log exists, and the court cannot compel the production of material that does not exist … the court accepts defendant's contention that no log exists"). Therefore, because no responsive documents exist, Plaintiff's motion to compel a further response to RPD No. 4 is DENIED.

Next, the Court considers RPD No. 2 and specifically Defendants' objection asserting the request is unduly burdensome. Plaintiff seeks "all 'review of use of force critiques and qualitative evaluations' for prisoner allegations of excessive force against Defendant from 6/14/14 to 6/14/19." Relevant here is a portion of the Declaration of J. Aguilar Apolinar, Correctional Counselor II and the Litigation Coordinator at CSP-COR, who explains:

> To assess whether there are any use of force critiques prepared related to non-party inmates' excessive use of force allegations against Defendants from June 14, 2014 to June 14, 2019, requires prison personnel to first search their databases for any staff complaints filed against the Defendants during that time, then individually pull these allegations from storage, as these documents are 7-12 years old, not maintained in electronic format, and stored in archives. Prison personnel then must manually search through the paper files to find each grievance because they are not organized by involved staff names. Once each paper grievance has been located, staff need to review each grievance to assess whether the staff complaint involves an allegation of excessive force, then cross reference that allegation with an incident package and the related use of force critique, then separately manually locate and pull that use of force critique and incident package from storage. This request is overly burdensome and would take many hours to complete by multiple staff in various departments.

(Doc. 71-2 at 5, ¶ 12.) For the reasons stated in the declaration, and in the absence of any reply by Plaintiff, the Court finds the request is unduly burdensome. The resources required to fulfill the request, and the scope of the request, would require multiple persons and significant time to complete where the records at issue are maintained in archives. *Miller*, 141 F.R.D. at 297

(sustaining objection to request for each internal investigation file involving the defendants); *see also Muhammad v. Burton*, No. 2:18-cv-2831 WBS AC P, 2024 WL 1198935, at *3 (E.D. Cal. Mar. 20, 2024) ("The court similarly finds that requiring defendant to produce copies of the work requests would be unduly burdensome, due to both the scope of the request and the resources that would have to be expended to locate any existing copies"); *Meyer v. County of San Diego*, No. 21-cv-341-RSH-BLM, 2024 WL 505193, at *10 (S.D. Cal. Jan. 22, 2024) (denying motion to compel seeking production of accessible hyperlinks within training transcripts where production of those hyperlinks "would require '40 hours to screen record'" that information and finding the request unduly burdensome) *King v. Biter*, No. 1:15-cv-00414-LJO SAB (PC), 2017 WL 3149592, at *6 (E.D. Cal. July 25, 2017) (denying motion to compel and finding three requests by plaintiff for "incident reports" and other documents to be "overbroad and unduly burdensome on Defendants"). Therefore, Plaintiff's motion to compel a response to RPD No. 2 is DENIED on that basis.

Next, the Court has reviewed the Declaration of J. Aguilar Apolinar. (*See* Doc. 71-2.) To the extent Plaintiff argues the declaration is deficient for purposes of asserting the official information privilege (*see* Doc. 68 at 5-6), his argument is largely unpersuasive.[2] Aguilar Apolinar declares that they are familiar with CDCR policies and procedures regarding confidential documents and the numerous risks associated with disclosing confidential information to inmates. (*Id.* at 2, ¶ 2.) They identify the specific documents sought by Plaintiff from Defendants Arden, Gamboa, Garcia, and Pasillas and declare they "reviewed the documents referenced on Defendants' privilege log" before concluding the documents were confidential. (*Id.* at 2, ¶ 3-4.) Aguilar Apolinar further declares that Plaintiff's requests include confidential use-of-force critiques, and other confidential documents and reports, and that disclosure of these documents could endanger the safety of staff and inmates, potentially jeopardize the security of the institution, and potentially deter inmates and witnesses from speaking candidly to

---

[2] In his motion, as concerns RPD No. 1, Plaintiff states: "It should be noted, and is particularly instructive, that Plaintiff's motion to compel was granted for use of force critiques in a prior case in this court. See Harris v. German, 2019 WL 4640503 (E.D. Cal. 9/24/19)." (Doc. 68 at 6.) A review of that Court's order reveals the Court found "the privilege log and supporting declaration produced by Defendants" were "inadequate" in several respects; therefore, that matter is distinguishable from this case.

investigators during use-of-force reviews. (*Id*. at 2, ¶ 4 & 4, ¶ 10-11.) In sum, the Court finds the Aguilar Apolinar declaration meets the threshold requirements necessary for this Court to assess the weight of the interests against and in favor of disclosure. *Miller*, 141 F.R.D. at 300; *Kelly,* 114 F.R.D. at 671.

Before the Court orders an *in camera* review, Plaintiff must prove: (1) how the requested information is relevant to the litigation or is reasonably calculated to lead to the discovery of admissible evidence; (2) the interest that would be harmed if the material were not disclosed; and (3) how that harm would occur and how extensive it would be. *Kelly*, 114 F.R.D. at 670-71. As discussed below, the Court finds that Plaintiff has not met this burden with respect to any of the RPDs at issue.

In his motion, Plaintiff argues RPD No. 1 is not overbroad, identifies the specific documents sought, and does not constitute improper character evidence. He states "[a]t issue is Defendants' credibility in denying use of excessive force" going to Defendants' "motive, intent, and lack of good faith." (Doc. 68 at 4.) Defendants contend the use of force critique documents[3] are treated as confidential by CDCR, include staff conclusions and recommendations, and should not be disclosed in order to preserve the integrity of the investigative process. (Doc. 71 at 3-5.)

In his perfunctory assertion about the relevance of the use of force critique documents, Plaintiff does not attempt to address the *Kelly* factors noted above regarding the nature and scope of any harm that would result from nonproduction of the documents. Even without Plaintiff showing under *Kelly* that an *in camera* examination of the use of force critique documents is warranted, the Court concludes – as other courts have found – that the documents should not be disclosed pursuant to the official information privilege. *E.g., Bland v. Rodriguez*, No. 1:20-cv-00478-DAD-EPG (PC), 2021 WL 4355374, at *3 (E.D. Cal. Sept. 24, 2021) ("Defendants may withhold the use of force critique from Plaintiff under the official information privilege because the concerns regarding safety and security of the prison outweigh the relevance of the material").

[3] The use of force critique identified in Defendants' privilege log includes the following subset of documents standard to all use of force critiques: (1) Incident Commander's Review/Critique; (2) Manager's Review—First Level; (3) Manager's Review—Second Level; (4) Institutional Executive Review Committee (IERC) Use of Force Review & Further Action Recommendation; and (5) Critique and Qualitative Evaluation. (Doc. 71-2, ¶ 9.)

Nonetheless, the Court construes Plaintiff's request for the documents to include party and witness statements. In that regard, the Aguilar Apolinar declaration states: "to the extent the use of force critique contains witness statements or evidence, disclosure of such information *would not materially add* to the non-confidential information that Plaintiff already possesses or may access concerning the facts, witnesses, and circumstances surrounding the use of force on June 14, 2019." (*See* Doc. 71-2 at 4-5, emphasis added.) The declaration further provides that "[t]he confidential information contained in the use of force critique is either duplicative of non-confidential information, amounts to staff conclusions or assessments, reveals the investigative process, reflects personnel files, unduly invades the privacy of others, or is administrative in nature." *Id*.

Witness statements should be produced. *E.g., Venegas v. Mendoza*, No. 1:21-cv-00962-ADA-EPG, 2022 WL 10626054, at *2 (E.D. Cal. Oct. 18, 2022) ("the summaries of witness interviews about the incident described in the use of force critique and executive review should be disclosed. They are highly relevant because they concern the incident at issue in the complaint and the witnesses' contemporary account of the incident") (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). Whether witness statements "would not materially add" to the information Plaintiff possesses or may access and whether witness statements unduly invade the privacy of others (as characterized in the Aguilar Apolinar declaration) is a determination for the Court. *Venegas,* 2022 WL 10626054, at *2; *see Caruso v. Solorio*, No. 1:15-cv-00780-AWI-EPG (PC), 2018 WK 2021019, at *5 (E.D. Cal. May 1, 2018) ("Defendants are permitted to withhold/redact any documents regarding the procedures for the interviews or conclusions of the prison. However, all summaries of witness statements and other evidence must be produced even if contained within a document reaching a concluding regarding the evidence"). As a result, the Court will direct Defendants to submit a supplemental filing attesting to whether all statements of percipient witnesses memorialized in the use of force critique documents have been disclosed. If not, Defendants will be directed to separately file those documents for ex parte and *in camera* review, accompanied by an explanation why those statements should not be disclosed.

Regarding RPD No. 2, Plaintiff contends that the "reasoning to compel [RPD] No 1 apply

full force to [RPD] No. 2," that Aguilar Apolinar's "declaration is disingenuous" and that "it is highly unlikely she even reviewed these documents." (Doc. 68 at 7.) He asserts "these documents are duly burdensome, not unduly burdensome" and that "Defendants have an extensive and sordid history of brutalizing inmates." (*Id.*) Plaintiff maintains that the "sheer volume of the complaints against them for a definite time period should not be a disincentive to disclosure." (*Id.*) The undersigned finds Plaintiff's request is geared towards obtaining inadmissible character evidence, and not proportional to the needs of his case. Fed. R. Evid. 404(a). To the extent Plaintiff questions the genuineness of Aguilar Apolinar's declaration, Plaintiff is advised that mere distrust and suspicion regarding discovery responses do not form a legitimate basis to further challenge responses which are facially legally sufficient. In the absence of evidence to the contrary, which has not been presented here, Plaintiff is required to accept Defendants' responses. *See Mootry v. Flores*, No. 1:09-cv-01252-LJO-BAM (PC), 2014 WL 3587839, *2 (E.D. Cal. July 21, 2014). Moreover, signed discovery responses are themselves certifications to the best of the person's knowledge, information, and belief formed after a reasonable inquiry. Fed. R. Civ. P. 26(g)(1)(B) (quotation marks omitted). As are other signed filings presented to the Court. *See* Fed. R. Civ. P. 11(b). Defendants' objection to RPD No. 2 is sustained and Plaintiff's motion is DENIED.

Next, Plaintiff contends, concerning RPD No. 3, that the "reasoning to compel [RPD] No. 1 and No. 2 apply full force to [RPD] No. 3." (Doc. 68 at 7.) He argues that "the dismissal of Defendant Boersma … does not render her false indecent exposure allegations irrelevant considering [it's] the impetus for Defendants to commit excessive force" and that courts "must take into account the totality of circumstances – including those leading up to it." (*Id.*) The undersigned finds Plaintiff's third request also appears geared towards obtaining inadmissible character evidence. Fed. R. Evid. 404(a). Moreover, Plaintiff's request sought "the investigative *findings* from the 'investigative closure memorandum' …." (Italics added.) As the Aguilar Apolinar declaration indicates, those documents were reviewed and declarant confirms "that this investigation found that no staff violated policy and no staff members were disciplined as a result, including Ms. Boersma and the Defendants." (Doc. 71-2 at 2-3, ¶ 6.) Therefore, while the documents themselves were not produced due to their confidential nature, the findings have been

identified. Defendants' objection to RPD No. 3 is sustained and Plaintiff's motion is DENIED.

Lastly, as concerns RPD No. 4, as noted above, Defendants responded that no responsive documents exist and no staff were disciplined. Regardless of any objection asserted, considering Defendants' response, nothing more is required of Defendants. *Hoffman*, 2017 WL 5900086, at *12. As concerns RPD No. 4, Plaintiff's motion is DENIED.

## IV. THE SCHEDULING ORDER WILL BE VACATED

The Court observes the deadline for the completion of discovery is set for September 29, 2026 (Doc. 50), and the deadline for filing pretrial dispositive motions was modified to March 10, 2027. (Doc. 67.) In light of the Court's findings herein, including the need to screen any amended complaint and this Court's continuing judicial emergency,[4] the scheduling order will be vacated. A new scheduling order will be issued after screening of the third amended complaint, if necessary and appropriate.

## V. CONCLUSION AND ORDER

Accordingly, for the reasons stated above, the Court **HEREBY ORDERS** that:

1. Plaintiff's motion for leave to file an amended complaint (Doc. 62) is **GRANTED IN PART**. Plaintiff will be permitted to file a third amended complaint, curing the deficiencies identified above regarding Claims III and IV;[5]
2. Plaintiff **SHALL** file a third amended complaint **within 30 days of the date of this order**. The third amended complaint will be subject to screening pursuant to 28 U.S.C. § 1915A(a) and will be screened in due course;
3. Plaintiff's motion to compel (Doc. 68) is **DENIED in part** as concerns RPD numbers 2, 3, and 4; the motion is **GRANTED in part** as concerns RPD number 1 to the extent further information is required of Defendants;
4. **Within 14 days**, Defendants **SHALL** file a supplement to their opposition to Plaintiff's motion to compel in which a knowledgeable witness attests to whether all

---

[4] *See* https://www.caed.uscourts.gov/caednew/index.cfm/news/judicial-emergency/.

[5] Plaintiff is reminded that an amended complaint supersedes the prior complaint. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012). Thus, any amended complaint must be complete in itself. Local Rule 220.

statements of percipient witnesses memorialized in the use of force critique documents have been disclosed to Plaintiff. If such statements have not been disclosed, within that same period, Defendants shall lodge with the Court (CDBorders@caed.uscourts.gov) for *ex parte* and *in camera* review, any witness statements referenced or summarized in the use of force critique documents that have not previously been disclosed to Plaintiff and an explanation why the statements should not be produced; and

5. The Discovery and Scheduling Order issued January 29, 2026 (Doc. 50) is **VACATED**. The Court will issue a new scheduling order when appropriate.

IT IS SO ORDERED.

Dated: **August 10, 2026**

UNITED STATES MAGISTRATE JUDGE