UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE B. HARRIS,<br>Plaintiff,<br>v.<br>D. ARDEN, et al.,<br>Defendants. | Case No. 1:21-cv-00818-KES-CDB (PC)<br>**SCREENING ORDER REGARDING PLAINTIFF'S THIRD AMENDED COMPLAINT** |

Plaintiff Devonte B. Harris is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. section 1983.

## I. RELEVANT BACKGROUND

On August 10, 2026, this Court issued its Order Granting in Part Plaintiff's Motion for Leave to Amend the Complaint. (Doc. 72.) More specifically, following consideration of Plaintiff's proposed second amended complaint (*id*. at 3-9), the Court granted the motion in part and permitted Plaintiff to file a third amended complaint within 30 days (*id*. at 22).

Following an extension of time, Plaintiff timely filed his third amended complaint on September 24, 2026. (Doc. 76.)

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not

sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

**B. Linkage and Causation**

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a "plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation") (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976)). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

**C. Supervisory Liability**

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

## IV. DISCUSSION

### A. Plaintiff's Third Amended Complaint

Plaintiff names D. Arden, A. Garcia, C. Gamboa, J. Pasillas, and D. Perez as Defendants. (Doc. 76 at 1-4.) He asserts four claims: Eighth Amendment excessive force (*id*. at 5-10), First Amendment retaliation (*id*. at 11), malicious prosecution in violation of the Fourth Amendment (*id*. at 12-13), and deliberate fabrication of evidence in violation of the Fourteenth Amendment (*id*. at 14). He seeks compensatory and punitive damages. (*Id*. at 15-16.)

**B. Plaintiff's Claims**

1. Eighth Amendment Excessive Force

A. Applicable Legal Standards

"[T]he unnecessary and wanton infliction of pain on prisoners constitutes cruel and unusual punishment" in violation of the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 328 (1986) (internal quotation marks & citation omitted). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (internal quotation marks & citation omitted).

A correctional officer engages in excessive force in violation of the Cruel and Unusual Punishments Clause if he (1) uses excessive and unnecessary force under all the circumstances, and (2) "harms an inmate for the very purpose of causing harm," and not "as part of a good-faith effort to maintain security." *Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018). In other words, "whenever prison officials stand accused of using excessive physical force …, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In making this determination, courts may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. Courts may also consider the extent of the injury suffered by the prisoner. *Id.* However, the absence of serious injury is not determinative. *Id.*

The Supreme Court has made clear that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action'" under the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citations omitted). Conversely, the absence of "significant" injury is not dispositive of a claim of excessive force. *See id*. at 36-37. But the extent of an inmate's injury is one factor indicative of whether the force used was necessary in a particular situation. Moreover, if force is applied maliciously and sadistically, liability is not avoided "merely because [the plaintiff] had the good fortune to escape without serious injury." *Id*. at 37. Put another way, there is no "de minimis" level of injury that is an acceptable result of excessive force under the Eighth

Amendment. *Id.* at 38-40; *see Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries).

B. Factual Allegations

While Plaintiff was housed in the Security Housing Unit (SHU) at Corcoran State Prison on June 14, 2019, at about 8:50 a.m., Licensed Clinical Social Worker M. Boersma entered the unit without making the required "opposite gender announcement." (Doc. 76 at 5-6.) Boersma was speaking with another inmate in an adjacent cell, claimed she saw movement at the window of Plaintiff's cell, and looked into "the toilet area." (*Id.* at 6.) Boersma falsely claimed that Plaintiff stood on something in the cell that allowed the lower half of his body to be exposed and that he stroked his fully erect penis with his right hand with an up and down motion while looking directing at her. (*Id.*) When Plaintiff noticed Boersma looking at him, he purportedly jumped down and away from his cell door. (*Id.*)

Plaintiff alleges placards covered his "cell door window, leaving only an 8 inch space at the top." (Doc. 76 at 6.) He states Boersma had no legitimate safety or security purpose to "look into" his cell, that California Department of Corrections and Rehabilitation (CDCR) regulations prohibit voyeurism by staff and its "PREA policy requires every institution" to allow inmates to shower, perform bodily function, and to change clothing outside non-medical staff's viewing except in exigent circumstances. (*Id.* at 6.) Plaintiff states he is 6 feet tall "and the anatomical distance exceeds eight inches between [his] eyes and penis," making Boersma's account impossible. (*Id.*)

Next, Plaintiff asserts Boersma reported her false allegations of indecent exposure to Defendant Perez. (Doc. 76 at 6.) At about 10 a.m., Licensed Clinical Social Worker Len Lulow, Plaintiff's clinician, approached Plaintiff's cell and offered a confidential setting for a psychotherapy session; Plaintiff accepted as his grandmother had passed away a few days earlier. (*Id.* at 6-7.)

At about 10:34 a.m., Defendants Arden and Garcia approached Plaintiff's cell and advised him he had a medical evaluation unrelated to the psychotherapy appointment. (Doc. 76 at 7.)

Plaintiff was subjected to an unclothed body search and handcuffed behind the back; Arden and Garcia then began escorting Plaintiff. (*Id.*) When Plaintiff asked if the medical evaluation was related to his excessive force complaint of May 18, 2019, wherein Defendants Arden, Gamboa, Garcia, and Pasillas "cracked" his cell door and threw an apple at him, Arden replied that Plaintiff was lucky "they didn't do [him] like Robinson," referring to another inmate whom Plaintiff alleges was assaulted by those individuals a few days earlier and who required stitches to his head and suffered a broken foot. (*Id.*) Plaintiff responded that he was not worried about it because he was "the one who all those C/Os were fired for using excessive force against." (*Id.*)

Next, Plaintiff alleges that when he, Arden, and Gamboa got to the rotunda area, Arden slammed Plaintiff on the ground without provocation. (Doc. 76 at 7.) Arden and Garcia then "got on the ground" and began punching Plaintiff in the face and back. (*Id.*) Plaintiff further alleges Gamboa and Pasillas were already present "in the rotunda feigning sweeping with brooms," but ran over and began kicking him in the face and back. (*Id.*) Five minutes passed before the control booth officer sounded the building alarm. (*Id.*) Plaintiff contends Defendant Perez walked slowly into the building, watched Arden, Garcia, Gamboa, and Pasillas assault him for several more minutes, then directed them to pick Plaintiff up off the ground. (*Id.*) Plaintiff asserts a spit mask was placed on him "to hide the degree of [his] injuries from Psychiatric Technician Lorena Rodriguez" who also had responded to the alarm to assess Plaintiff. (*Id.*) Plaintiff was placed in the rotunda's holding cell. (*Id.*)

When Lieutenant Randolph responded to the alarm, Plaintiff advised him that staff had used excessive force against him and that he felt suicidal. (Doc. 76 at 7.) Randolph asked Plaintiff about exposing himself to his "female clinician Boersma." (*Id.*) Plaintiff told Randolph he did not expose himself, that he did not know who Boersma was, and that his clinician was Lulow. (*Id.*) About 40 minutes later, while Lulow was waiting to see Plaintiff, "some custody staff" in the corridor stated that Plaintiff had exposed his genitals to one of the clinicians on the tier that morning. (*Id.* at 7-8.) When an alarm sounded several minutes later, Lulow witnessed several correctional officers run past in Plaintiff's direction. (*Id.* at 8.) Randolph asked Lulow if he needed to see Plaintiff then informed Lulow that Plaintiff "had been 'dumped' or taken to the

floor that morning in an altercation with staff." (*Id.*) When Lulow saw Plaintiff in a chair with a spit mask over his head "that was soaked in blood in a few spots on or near" Plaintiff's face, Plaintiff advised Lulow he felt suicidal. (*Id.*) Lulow contacted the Crisis Intervention Team (CIT). (*Id.*)

Next, Nurse Lina Lewis, a member of CIT, sent Plaintiff to the Triage and Treatment Area (TTA) and Psychologist Weifu Liao, also a member of CIT, contacted a sergeant in the Investigative Services Unit (ISU) to report Plaintiff's excessive force complaint. (Doc. 76 at 8.)

At about 11:30 a.m., Plaintiff alleges Lieutenant Randolph contacted the Office of Inspector General to notify them that "staff had inflicted serious bodily injury upon" Plaintiff. (Doc. 76 at 8.) At 11:34 a.m., Nurse Alyssa Cerda noted Plaintiff had a lump and abrasion on the left side of his head, chipped and loose teeth, tenderness and dried blood around both nostrils, and severe back pain with any slight movement or change of position. (*Id.*) Cerda contacted Dr. Edward Clark. (*Id.*) Clark observed two chipped teeth "and a slab of tooth" where Plaintiff's crown was located, pain and tenderness to Plaintiff's lumbar spine and tenderness around his eyes. (*Id.*) Clark ordered an emergency consultation with Dentist Chita Buenafe. (*Id.*) Buenafe noted a fractured crown "with remaining root portion," left side facial swelling, a significant hematoma in the left orbital area, and a possible left zygomatic arch fracture. (*Id.*) Plaintiff was prescribed antibiotics and a "mucous membrane liquid rinse." (*Id.*) Buenafe did not remove Plaintiff's loose and broken front tooth because she suspected his jaw was fractured; she referred him to an oral surgeon. (*Id.* at 9.) Clark prescribed morphine, a liquid nutritional supplemental, and admitted Plaintiff to the Correctional Treatment Center (CTC). (*Id.*)

Plaintiff alleges he suffered two broken front teeth, two chipped teeth, a left jaw fracture, "knots" on the left side of his face, a bloody nose, bruising on his hands, left elbow and back, a "busted lip," acute back pain and other pain and suffering, mental anguish and emotional distress. (Doc. 76 at 8.)

On June 15, 2019, Plaintiff was interviewed by Sergeant Huerta at the CTC; the interview was video recorded and concerned his excessive force complaint and documented his injuries. (Doc. 76 at 9.) That evening, Plaintiff was discharged from CTC by Dr. Aye, over his "objection

in absentia while [he] still suffered severe pain and immobilization." (*Id.*) On June 21, 2019, during an appointment with Dentist Vaughn Stewart, a panoramic x-ray revealed a jaw fracture behind Plaintiff's left orbital socket connection to the zygoma. (*Id.*) Plaintiff's front tooth "was partially [avulsed] from the socket and one of [his] chipped teeth was mobile and very sensitive." (*Id.*) Stewart recommended the tooth be extracted and Dentist Henry Uy exacted the tooth. (*Id.*)

On July 11, 2019, Plaintiff's diet was modified to accommodate the tooth extraction and a pre-existing esophageal stricture condition. (Doc. 76 at 9.) Dietician Ronald Vicencio also referred Plaintiff to a speech pathologist for further evaluation. (*Id.*) Plaintiff alleges the prison "did not honor" the diet change "due to SHU housing" and he never saw a speech pathologist. (*Id.*)

Plaintiff contends that on May 21, 2020, another of his front teeth was extracted "after the root died." (Doc. 76 at 9.) Further, he asserts that his "permanent inability to bite, combined with an esophageal stricture requiring [his] food be chewed finely, caused [him] chronic digestive pain exacerbating [his] pre-existing dysphagia diagnosis." (*Id.*) Plaintiff alleges that CDCR developed "a soft food/bite size medical diet" in 2022 and he has been prescribed that diet permanently. (*Id.*)

Plaintiff asserts Arden, Garcia, Gamboa and Pasillas "had an extensive and sordid history of brutalizing inmates," particularly those who were handcuffed behind their back, making them vulnerable and defenseless. (Doc. 76 at 9-10.) Plaintiff lists "[t]heir victims" and the injuries those inmates suffered. (*Id.* at 10.)

C. Analysis

Liberally construing the third amended complaint and accepting all facts as true, as before (*see* Doc. 11 at 7-8), Plaintiff plausibly alleges Eighth Amendment excessive force claims against Defendants Arden, Garcia, Gamboa and Pasillas.

Upon this preliminary screening, Plaintiff fails to allege a cognizable excessive force claim against Defendant Perez. The only facts alleged are that Perez received a false report from Boersma, that Perez walked slowly into the building after the alarm sounded, and that Perez watched Arden, Garcia, Gamboa and Pasillas for "several more minutes" before directing them to pick Plaintiff up from the floor. (Doc. 76 at 7.) No facts are alleged that Perez used excessive or

unnecessary force against Plaintiff. *Hudson*, 503 U.S. at 6-7; *Hoard*, 904 F.3d at 788.

However, an officer's failure to intervene can support an excessive force claim where the bystander-officers had a realistic opportunity to intervene but failed to do so. *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1994). Further, a prison official may be liable under section 1983 if he is aware that a fellow official is violating a prisoner's constitutional rights but fails to intervene. *See Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution"). Thus, liberally construed, Plaintiff plausibly alleges an Eighth Amendment excessive force claim against Perez on a failure to intervene theory. He contends Perez approached slowly after the alarm sounded and watched the other named Defendants "for several more minutes" before directing them to pick Plaintiff up. *Lolli*, 351 F.3d at 418; *Cunningham*, 229 F.3d at 1289; *Robins*, 60 F.3d at 1442; *Gonzales v. Cate*, No. 1:06-cv-1420-AWI-MJS (PC), 2011 WL 1332174, at *3 (E.D. Cal. Apr. 5, 2011) ("To state a claim for failure to intervene, Plaintiff must allege circumstances showing that these officers had an opportunity to intervene and prevent or curtail the violation (e.g., enough time to observe what was happening and intervene to stop it), but failed to do so").

In sum, Plaintiff plausibly alleges Eighth Amendment excessive force claims against all named Defendants.

2. <u>First Amendment Retaliation</u>

A. Applicable Legal Standards

Prisoners have a First Amendment right to file prison grievances and lawsuits and retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). A claim for First Amendment retaliation in the prison context requires: (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68. To prove the second element, retaliatory motive,

plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord, *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

B. Factual Allegations

Plaintiff states he is "a litigious inmate who has filed numerous lawsuits, grievances and excessive force complaints," including a prior action filed against Defendants Arden, Garcia, Gamboa, and Pasillas concerning events occurring on May 18, 2019. (Doc. 76 at 11.) He contends that Arden "authored a false retaliatory report" against him for battery on a non-prisoner "to cover up his excessive force" against Plaintiff. (*Id.*) Further, Plaintiff contends Garcia, Gamboa, and Pasillas authored false reports supporting Arden's battery claim, alleging resistance by Plaintiff to cover up their own use of excessive force. (*Id.*) Plaintiff alleges Lieutenant Munoz found him guilty at the related disciplinary hearing and sanctioned Plaintiff by imposing a 90-day loss of annual package privileges, a 90-day loss of personal property, and a 10-day loss of yard privileges. (*Id.*)

C. Analysis

Liberally construing the third amended complaint, as before (*see* Doc. 11 at 9-10), the Court finds Plaintiff states cognizable First Amendment retaliation claims against Defendants Arden, Garcia, Gamboa, and Pasillas. Plaintiff contends he engaged in the protected activity of filing an excessive force complaint against those individuals for a previous incident, that they then took adverse action against Plaintiff by attacking him during a later escort and in the absence of provocation, it reasonably can be inferred that Plaintiff's rights were chilled, and that

Defendants' retaliatory actions did not advance a legitimate correctional goal. *McCollum*, 647 F.3d at 882; *Brodheim*, 584 F.3d at 1269, 1271; *Rhodes*, 408 F.3d at 567-68.

In short, Plaintiff states cognizable First Amendment retaliation claims against Defendants Arden, Garcia, Gamboa, and Pasillas.

3. <u>Fourth Amendment Malicious Prosecution</u>

A. Applicable Legal Standards

To state a claim of malicious prosecution, a plaintiff must plead the following: (i) the suit or proceeding was "instituted without any probable cause;" (ii) the "motive in instituting" the suit "was malicious," which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution "terminated in the acquittal or discharge of the accused." *Thompson v. Clark*, 596 U.S. 36, 44 (2022) (quoting T. Cooley, Law of Torts 180 (1880)). Stated another way, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) (brackets in original), quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir.1995); *see Hebrard v. Nofziger*, 90 F.4th 1000, 1007-08 (9th Cir. 2024). "Malicious prosecution actions are not limited to suits against prosecutors but may be brought ... against other persons who have wrongfully caused the charges to be filed." *Hebrard*, 90 F.4th at 1108 (citing *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002)).

As concerns favorable termination, in *Thompson*, the Supreme Court rejected the argument that modern tort law should inform the contours of a Fourth Amendment malicious prosecution claim. *Thompson*, 596 U.S. at 47-48. The high court acknowledged that the Restatement (Second) of Torts (1976) endorsed the idea that the favorable termination element requires some affirmative showing of innocence, as have many jurisdictions today. *Id.* But it explained that the "relevant inquiry" to understand the meaning of a malicious prosecution claim under the Fourth Amendment is tort law in early American history, not current tort law. *Id.* at 48.

///

B. Factual Allegations

Plaintiff contends that on August 11, 2020, the Kings County District Attorney filed a criminal complaint against him based upon the false reports authored by Defendants Arden, Garcia, Gamboa, and Pasillas. (Doc. 76 at 12.) Count 1 alleged Plaintiff committed battery of a non-confined person against Arden in violation of California Penal Code section 4501.5; Counts 2 through 4 alleged Plaintiff attempted by means of threat or violent to prevent or deter Arden, Garcia, and Gamboa from performing a duty and knowingly resisting by the use of force or violence in violation of California Penal Code section 69. (*Id.*) The criminal complaint further alleged Plaintiff had suffered prior serious and violent felonies in violation of California Penal Code sections 667(b)-(i) and 1170.12(a)-(d). (*Id.* at 12-13.)

Plaintiff alleges his commitment offense involves kidnapping during a carjacking in violation of California Penal Code section 209.5, a "'super strike'" pursuant to section 667(d)(2)(c)(iv)(VIII). (Doc. 76 at 12-13.) As a result, if convicted, Plaintiff faced 25-years-to-life sentences on each count. (*Id.* at 13.)

Next, Plaintiff contends the Kings County District Attorney "unconditionally dismissed Count 1," the battery against Arden, on July 7, 2023. (Doc. 76 at 13.) Further, on February 20, 2024, the Kings County Superior Court granted Plaintiff "pretrial mental health diversion, with no admission of guilt, under California Penal Code section 1001.36" concerning the remaining counts for resisting a peace officer. (*Id.*) Thereafter, on January 14, 2026,[1] that court dismissed Counts 2 through 4, involving Arden, Garcia, and Gamboa, following Plaintiff's satisfactory completion of diversion. (*Id.*)

C. Analysis

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff plausibly alleges malicious prosecution claims against Defendants Arden, Garcia, Gamboa, and Pasillas. He contends the criminal complaint filed by the Kings County District Attorney in August 2020 was based on false reports authored by those individuals. Further, it reasonably can

[1] Plaintiff wrote "1/14/16" here, but it is clear that the "16" is a typographical error.

be inferred from Plaintiff's allegations that these individuals' motive was malicious and/or involved a purpose other than bringing Plaintiff to justice because Plaintiff plainly asserts their actions were retaliatory in nature following an earlier excessive force complaint. Lastly, Plaintiff asserts the battery count involving Arden was "unconditionally dismissed" on July 7, 2023, and the remaining counts involving Arden, Garcia, and Gamboa were dismissed on January 14, 2026, following Plaintiff's successful completion of mental health diversion. *Thompson*, 596 U.S. at 44, 47-48; *Hebrard*, 90 F.4th at 1108; *see Powelson v. Havel*, No. 24-cv-08245-JST, 2025 WL 2696429, at *10 (N.D. Cal. Sept. 22, 2025) ("Since *Thompson* was decided, both the Ninth Circuit … and at least three district courts have permitted malicious prosecution claims to go forward notwithstanding the plaintiff's participation in a diversion program") (citing cases); *Ransom v. Herrera*, No. 1:11-cv-01709-LJO-EPG, 2017 WL 2833396, at *7-8 (E.D. Cal. June 30, 2017) (finding cognizable malicious prosecution claim based upon plaintiff's allegations that defendants Brannum and Herrera fabricated evidence that was sent to prosecutors "and that the evidence was fabricated in order to deprive [him] of his Fifth Amendment constitutional right") findings and recommendation adopted, 2017 WL 3282855 (E.D. Cal. Aug. 2, 2017).

Plaintiff will be permitted to proceed with his malicious prosecution claims against Defendants Arden, Garcia, Gamboa, and Pasillas.

4. Fourteenth Amendment Deliberate Fabrication of Evidence

A. Applicable Legal Standards

"[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc). "A plaintiff can prove deliberate fabrication in two ways." *Richards v. Cnty. of San Bernardino*, 39 F.4th 562, 569 (9th Cir. 2022). "Most basically, a plaintiff can produce direct evidence of deliberate fabrication." *Caldwell v. City & Cnty. of S.F.*, 889 F.3d 1105, 1112 (9th Cir. 2018). "Alternatively, a plaintiff can produce circumstantial evidence related to a defendant's motive." *Id.* To prove fabrication using circumstantial motive evidence, a plaintiff must establish that either: (a) "[d]efendants continued their investigation of [plaintiff] despite the fact that they knew

or should have known that he was innocent"; or (b) "[d]efendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076.

"To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (citations omitted). To establish the second element of causation, the plaintiff must show "that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." *Id.* (citations omitted). Causation is established if the plaintiff "can show a reasonable likelihood that the allegedly fabricated [] evidence could have affected the judgment of the jury." *Richards*, 39 F.4th at 573-74. "Mere carelessness is insufficient, as are mistakes of tone. Errors concerning trivial matters cannot establish causation, a necessary element of any § 1983 claim. And fabricated evidence does not give rise to a claim if the plaintiff cannot show the fabrication actually injured her in some way." *Spencer*, 857 F.3d at 798.

B. Factual Allegations

Plaintiff, prompted by the form pleading to identify the issue involved, wrote "Deliberate Fabrication of Evidence Deveraux claim" and contends this "claim is based on the exact same facts alleged" in Claim 3 asserting malicious prosecution. (Doc. 76 at 14.)

C. Analysis

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff plausibly alleges violations of the Fourteenth Amendment for fabrication of evidence. Plaintiff contends Arden, Garcia, Gamboa, and Pasillas deliberately fabricated reports following the events of June 14, 2019, in retaliation for his having filed a complaint against those individuals for an incident occurring in May 2019, resulting in the Kings County District Attorney filing of a criminal complaint in 2020 wherein Plaintiff was charged with one count of felony battery and three counts of felony resisting by use of force or violence. Those charges subjected Plaintiff to

potential 25-year-to-life sentences per count. *Richards*, 39 F.4th 573-74; *Spencer*, 857 F.3d at 798; *Devereaux*, 263 F.3d at 1074-75; *see Harris v. Borquez*, No. 1:23-cv-00046-BAM (PC), 2023 WL 2392747, at *3-4 (E.D. Cal. Mar. 7, 2023) (finding cognizable violation of Fourteenth Amendment for deliberate fabrication of evidence); *Garces v. Hernandez*, No. 1:21-cv-00392-JLT-EPG (PC), 2022 WL 15523563, at *6 (E.D. Cal. Oct. 27, 2022) (granting leave to file amended complaint and finding proposed third amended complaint plausibly stated deliberate fabrication claims).

Plaintiff will be permitted to proceed with his deliberate fabrication of evidence claims against Defendants Arden, Garcia, Gamboa, and Pasillas.

## V. SCREENING SUMMARY

In his third amended complaint, Plaintiff states the following cognizable claims:

- Eighth Amendment excessive force against Defendants Arden, Garcia, Gamboa, Pasillas, and Perez
- First Amendment retaliation against Defendants Arden, Garcia, Gamboa, and Pasillas
- Fourth Amendment malicious prosecution against Defendants Arden, Garcia, Gamboa, and Pasillas
- Fourteenth Amendment fabrication of evidence against Defendants Arden, Garcia, Gamboa, and Pasillas

## VI. CONCLUSION AND ORDER

Accordingly, the Court **HEREBY ORDERS** that:

1. This action proceeds on Plaintiff's Eighth Amendment excessive force claims against Defendants Arden, Garcia, Gamboa, Pasillas, and Perez; First Amendment retaliation claims against Defendants Arden, Garcia, Gamboa, and Pasillas; Fourth Amendment malicious prosecution claims against Defendants Arden, Garcia, Gamboa, and Pasillas; and Fourteenth Amendment fabrication of evidence claims against Defendants Arden, Garcia, Gamboa, and Pasillas;
2. Defendants are **DIRECTED** to file an answer to Plaintiff's third amended complaint within 30 days of the date of this order;

3. The Clerk of the Court is **DIRECTED** to issue a Discovery and Scheduling Order in this action; and

4. The Court will issue a separate order in due course following *in camera* review of the materials provided by Defendants in August 2026.

IT IS SO ORDERED.

Dated: **November 10, 2026**

UNITED STATES MAGISTRATE JUDGE